Robert J. Maynes, ISB No. 6905
Stephen K. Madsen, ISB No. 6253
**MAYNES TAGGART PLLC**
P. O. Box 3005
Idaho Falls, ID 83405
Telephone: (208) 552-6442
Facsimile: (208) 524-6095
Email: rmaynes@maynestaggart.com
        smadsen@maynestaggart.com

*Attorneys for Plaintiff*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

|  |  |
|---|---|
| In Re: | Case No. 11-40128 JDP |
| KINGSTON, DAVID ORVILLE, | Chapter 11 |
| Debtor. | |
| DAVID ORVILLE KINGSTON, | Adversary Case No. 18-_____ JDP |
| Plaintiff, | |
| vs. | |
| BANK OF AMERICA CORPORATION a/k/a BANK OF AMERICA, N.A. successor by merger to BAC Home Loans Servicing, L.P. f/k/a Countrywide Home Loans Servicing, LP, successor to Countrywide Home Loans, Inc.; FEDERAL NATIONAL MORTGAGE ASSOCIATION (FNMA) a/k/a Fannie Mae, a Federally chartered corporation; SETERUS, INC. a Delaware corporation; BUNGALOW SERIES F TRUST, a Delaware statutory trust; U.S. BANK TRUST, NATIONAL ASSOCIATION a subsidiary of U.S. Bancorp a/k/a U.S. Bank, National Association, a Delaware corporation, as trustee for Bungalow Series F Trust; | |

DOES 1-10, unknown business entities;
AND DOES 11-20 unknown individuals.

Defendants.

## COMPLAINT

COMES NOW THE Plaintiff, David Orville Kingston, Chapter 11 Debtor ("Debtor"), by and through his counsel, Maynes Taggart PLLC, and alleges as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157, 11 U.S.C. §§ 105(a), 362 and 1141, Article XI of Debtor's confirmed plan of reorganization, and pursuant to the Rules of this Court and the United States District Court for the District of Idaho, in that this action arises in and relates to the Chapter 11 Bankruptcy Case filed by the above referenced debtor on February 3, 2011 as Case No. 11-40128-JDP.

2.     This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (C), (L) and/or (O), and to the extent that it is found to be a non-core proceeding that is otherwise related to this bankruptcy case, the non-core matters, if any, are so inextricably linked with core matters that this Court's exercise of jurisdiction is proper.

3.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## PARTIES

4.     Plaintiff is David Orville Kingston, the Chapter 11 Debtor ("Debtor").

5.     Defendant, Bank of America Corporation a/k/a Bank of America, N.A., is a national banking institution conducting business throughout the United States, including in the State of Idaho, and is the successor by merger to BAC Home Loans

Servicing, L.P. formerly known as Countrywide Home Loans Servicing, L.P., successor to Countrywide Home Loans, Inc.

6.      Defendant, Federal National Mortgage Association (FNMA), a/k/a Fannie Mae, a Federally chartered corporation and note holder of the Loan (as that term is defined below).

7.      Defendant, Seterus, Inc., a Delaware corporation, who is the agent and loan servicer for the note holder(s) of the Loan (as that term is defined below).

8.      Defendant, Bungalow Series F Trust, a Delaware statutory trust and note holder of the Loan (as that term is defined below).

9.      U.S. Bank Trust, National Association, a subsidiary of U.S. Bancorp a/k/a U.S. Bank, National Association, a Delaware corporation, as trustee for Bungalow Series F Trust, ad note holder of the Loan (as that term is defined below).

10.      Defendant(s), Does 1-10 are unknown business entities who are subsequent note holders, servicers or agents of note holders and servicers, of the Loan (as that term is defined below) or who may otherwise have an interest in the subject matter of this adversary proceeding, whose identities are currently unknown.  Plaintiff reserves the right to amend this Complaint at such time as the identities of these Defendants are discovered.

11.      Defendant(s), Does 11-20 are unknown individuals who are subsequent note holders, servicers or agents of note holders and servicers, of the Loan (as that term is defined below) or who may otherwise have an interest in the subject matter of this adversary proceeding, whose identities are currently unknown.  Plaintiff reserves the

right to amend this Complaint at such time as the identities of these Defendants are discovered.

12.     On information and belief, Defendants, and each of them, have assumed liability, including individually, by agreement and/or by law, and are joint and severally liable for the damages asserted herein.

13.     On information and belief, at all times mentioned herein, Defendants were the agents, principals, employees, servants, partners, joint venturers, and representatives of each other.  In doing the acts alleged herein, the Defendants, and each of them, were acting within the scope and course of their authority as such agents, principals, employees, servants, partners, joint venturers, and representatives, and were acting with the permission and consent of the other Defendants.

14.     The foregoing Defendants are referred to collectively herein as the "Defendants".

## FACTUAL ALLEGATIONS

15.     On or about March 13, 2007, approximately four years prior to the filing of Debtor's petition, Debtor entered into an *Interest Only Adjustable Rate Note* and *Deed of Trust* (the "Loan") with Countrywide Home Loans, Inc. for a property located at 5250 S. Rainbow Boulevard, Unit 1062 Las Vegas, NV ("Unit 1062").

16.     At some point in time after Debtor entered into the Loan, Countrywide Home Loans, Inc. was succeeded by BAC Home Loans Servicing, LP ("BAC") f/k/a Countrywide Home Loans Servicing LP.

17.     On February 3, 2011, Debtor filed a Chapter 11 bankruptcy petition ("Petition Date"). By operation of law,[1] Debtor's filing of his petition triggered an automatic stay, preventing creditors from continuing or instigating collection efforts and/or harassment of the Debtor.

18.     On April 8, 2011, BAC filed *Proof of Claim* (Claim 17), as a secured claim based on a deed of trust related to Unit 1062.

19.     Bank of America, N.A. ("BOA") is the successor by merger to BAC Home Loans Servicing, which merger took place in approximately June of 2011.

## PLAN TREATMENT AND
## ADEQUATE PROTECTION STIPULATION

20.     During the course of the chapter 11 case, Debtor and BOA entered into a *Stipulation Between David O. Kingston and Bank of America, NA for: (1) Plan Treatment; (2) Use of Cash Collateral/Reimbursement of § 506(c) Expenses; and (3) Surrender of 1031 S. and 2051 S. Island Green Drive, Coeur D'Alene, Idaho* (Doc. 159, pp. 5-9)[2] (the "Stipulation") on August 12, 2011.   A true and correct copy of the Stipulation is attached hereto as Exhibit "A" and incorporated herein by reference.

21.     At the time of, and in the Stipulation, BOA represented that it was the owner of the Loan.

22.     Through the Stipulation, Debtor and BOA stipulated that the current fair market value of ten (10) properties located at 5250 S. Rainbow Boulevard (also referred to in the Stipulation as the Spanish Palms Condominiums, SP Units or the LV Properties)

---

[1] See generally 11 U.S.C. §§ 105 and 362.
[2] Unless stated otherwise, all references to docket numbers herein shall refer to Debtor's bankruptcy case, Case No. 11-40128-JDP.

would be a "Cram Down Amount". Specifically, the fair market value and Cram Down Amount of Unit 1062 was stipulated to be $95,000.00. Ex. A at Paragraph 1.

23.     The Stipulation further provided that, "[c]ommencing within fifteen (15) days after entry of a Order approving this Stipulation and continuing monthly thereafter, the Debtor shall, as adequate protection and plan treatment, pay monthly payments from the rents associated with the LV properties." Ex. A at Paragraph 2.

24.     The monthly payment for Unit 1062 was set at $452.54 and was to be applied to interest and principal on the Cram Down Amount. *Id.*

25.     Interest was stipulated at a fixed rate of 4.0% a.p.r. and the Stipulation also stated that, "Cram Down Amounts shall be amortized on a thirty-year (30-year) term commencing on the date of Court approval." *Id.* at Paragraphs 3 and 4.

26.     In exchange for the terms in the Stipulation, the Debtor agreed to surrender his interest in 1031 and 2051 S. Island Green Drive, Coeur d'Alene, ID. *Id.* at Paragraph 8.

27.     The Debtor did in fact surrender his interest in 1031 and 2051 S. Island Green Drive, Coeur d'Alene, ID.

28.     The Debtor further agreed in the Stipulation to incorporate the Stipulation into any proposed chapter 11 plan. *Id.* at Paragraph 9.

29.     On August 31, 2011 the Bankruptcy Court entered its *Order Granting Motion for Approval of Agreement Relating to Providing Adequate Protection and Use of Cash Collateral Pursuant to Rule 4001(d)* (Doc. 173) (the "Approval Order") by which it ordered that the Stipulation be approved. A true and correct copy of the Approval Order is attached hereto as Exhibit "B" and incorporated herein by reference.

30.    Pursuant to the terms of the approved Stipulation, Debtor's payment obligations commenced on August 31, 2011 (the "Payment Commencement Date") and were due by September 15, 2011 and the 15th of each month thereafter (the "Payment Due Date"), thus superseding all other terms and conditions of the Loan and related deed of trust between Debtor and BOA.

31.    Since the Payment Commencement Date, Debtor has timely made all payments on Unit 1062 pursuant to the terms of the Stipulation.

## STAY VIOLATIONS IMMEDIATELY COMMENCE

32.    Immediately following entry of the Approval Order, BOA began and continued sending payment demands inconsistent with the Stipulation.  For example, attached hereto as Exhibit "C", which is and incorporated herein by reference, is a copy of the BOA demand dated September 29, 2011 and received on October 11, 2011 wherein BOA asserts a principal balance of $186,400.00, an interest rate of 6.5% and a monthly payment of $1,009.67 a month as an interest only payment.  It also asserts a "Partial Payment Balance" of $452.54.

33.    On information and belief, similar demands continued to be sent to the Debtor on a regular monthly basis throughout the bankruptcy case, post-confirmation of Debtor's plan and post-bankruptcy case closure.

## PLAN CONFIRMATION AND CASE CLOSURE

34.    Subsequent to entry of the Approval Order, the stipulated treatment of the ten (10) Rainbow Boulevard properties was incorporated into Debtor's *Third Amended Chapter 11 Plan of Reorganization* (Doc. 401) as Class 4.

35.     On December 20, 2012 the Bankruptcy Court entered an *Order Confirming Chapter 11 Plan* (Doc. 496) (the "Confirmation Order"), confirming the Debtor's *Third Amended Chapter 11 Plan of* Reorganization (the "Confirmed Plan") (Doc. 496-1), including the stipulated treatment of the secured claim on Unit 1062 of the Rainbow Boulevard properties.  True and correct copies of the Confirmation Order and Confirmed Plan are attached hereto as Exhibits "D" and "E", respectively, which are incorporated herein by reference.

36.     On December 23, 2012, notice of the Confirmed Plan and the Confirmation Order was provided to BOA and BAC through counsel of record.  A true and correct copy of the BNC Notice of the Confirmation Order, Doc. 500 is attached hereto as Exhibit "F" and incorporated herein by reference.  See specifically Ex. "F" at p. 11 (service effected on "David E Leta on behalf of Creditor Bank of America delta@swlaw.com"; "Lance E Olsen on behalf of Creditor BAC Home Loans Servicing, LP ecfid@rcflegal.com"; and "Monte C Gray on behalf of Creditor Bank of America montegray@cableone.net").

37.     These Defendants constitute members of Class 4 of the Confirmed Plan.

38.     The Confirmed Plan, Paragraph 3.3.2, Class 4 incorporates by reference the terms of the Stipulation, as follows:

> 3.3.2   Class 4:  Secured Claims of Bank of America with respect to Spanish Palms Condominiums, Las Vegas, NV, Units 1034, 1061, 1062, 1063, 1064, 2034, 2061, 2062, 2063, & 2064.  The allowed secured claims held by members of this class shall be paid in full pursuant to the terms and conditions of that certain *Stipulation Between David O. Kingston and Bank of America, NA for: (1) Plan Treatment; (2) Use of Cash Collateral/Reimbursement of § 506(c) Expenses; and (3) Surrender of 1031 S. and 2051 S. Island Green Drive, Coeur d'Alene, Idaho* (Exhibit "A" to Docket No. 159), which is incorporated herein by reference as if set forth in full.  *Each secured creditor in this class shall retain the lien securing the claim, until the allowed secured claims have been paid as provided herein.*

(Exhibit "E", Doc. 496-1, pp. 10-11).

39.   The Confirmed Plan further provides that "all holders of claims against . . .

Debtor are permanently enjoined" from collection activities.  Exhibit "E" at pp. 29-30.

40.   Paragraph 12.5 of the Confirmed Plan (Doc. 496-1, pp. 29-30) provides

that:

### 12.5 Injunction.

Except as otherwise expressly provided in this Plan, all holders of claims against or
Interests in Debtor are permanently enjoined, from and after the Effective Date, from (1)
commencing or continuing in any manner any action or other proceeding of any kind on

any such claim against or Interest in Debtor or against the property dealt with by this
Plan, or Debtor's estate; (2) the enforcement, attachment, collection or recovery by any
manner or means of any judgment, award, decree or order against the property dealt with
by this Plan or Debtor's estate; and (3) creating, perfecting or enforcing any encumbrance
or any kind against the property or interests in property of the Debtor's estate, the Exempt
Assets or property dealt with by this Plan.  Further all creditors filing claims in this
proceeding shall on the Effective Date of the Plan be required to dismiss Debtor from any
action filed in any court.

41.   The Confirmed Plan further provides that the provisions of sections 105

and 362 of the Bankruptcy Code "shall remain in full force and effect during the term of

the Plan."  Ex. "E" at p. 32.

42.   Section 14.5 of the Confirmed Plan (Doc. 496-1, p. 32), expressly

provides:

### 14.5 Term of Injunctions or Stays.

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in
effect in the Chapter 11 cases under sections 105 or 362 of the Bankruptcy Code or any
order of the Bankruptcy Court, and in existence on the Confirmation Date (excluding any
injunctions or stays contained in this Plan or the Confirmation Order), shall remain in full
force and effect during the term of the Plan. All injunctions or stays contained in this Plan
or the Confirmation Order shall remain in full force and effect in accordance with their
terms.

43.   On March 29, 2013, the Bankruptcy Court entered an *Order Closing*

*Chapter 11 Case* (Doc. 549).

## VIOLATIONS CONTINUE AND ESCALATE

44.    On information and belief BOA continued to send inaccurate loan statements and demands for payments each month to Debtor.

45.    Debtor, his personal assistant and his in-house counsel made repeated efforts to telephone BOA to correct the errors, to no avail.

46.    Each telephone call to BOA would result in the Debtor, his personal assistant, or his in-house counsel being shuttled between various departments and individuals with little to no personal understanding of Debtor's obligations under the Stipulation, Approval Order, Confirmed Plan and Confirmation Order.

47.    After countless hours of telephone efforts to correct the ongoing stay violations, on January 31, 2013, the Debtor's personal assistant, Janae Kingston, sent a letter to BOA expressing concern that the payments on all ten BOA loans, including the subject Loan, had been misapplied.

48.    In her January 31, 2013 letter to BOA, Ms. Kingston provided a copy of the Stipulation and requested a statement of accounts showing correction of the misapplied payments.

49.    Referencing BOA's failure to correct the stay violations, Ms. Kingston expressly noted:

> Since this has gone on almost two years, there has been plenty of opportunity to correct these loans based upon the court ruling. I realize  getting this to the correct people will make a difference of it getting done or not.  I am hoping this letter and the enclosures will help get this completed.

A true and correct copy of the January 31, 2013 Letter and enclosures is attached hereto as Exhibit "G" and incorporated herein by reference.

50.     BOA did not respond to the January 31, 2013 Letter.

51.     On or about February 19, 2013, the Debtor received a Notice of Assignment, Sale, or Transfer of Ownership of Mortgage Loan dated January 13, 2013 indicating that BOA had sold several of the loans associated with the Rainbow Boulevard Properties to BofA Merrill Lynch Asset Holdings, Inc. on January 25, 2013 (the "First Notice of Assignment").

52.     According to the First Notice of Assignment, BOA retained the servicing obligations on the Loan.

53.     In response to the First Notice of Assignment, the Debtor's personal assistant, Ms. Janae Kingston, sent a letter to BOA and courtesy copied BofA Merrill Lynch Asset Holdings, Inc. (the "February 19, 2013 Letter") providing copies of the First Notice of Assignment, the Stipulation (along with the Motion for Approval), and her January 31, 2013 Letter with enclosures. A true and correct copy of Ms. Kingston's February 19, 2013 Letter and enclosures is attached hereto as Exhibit "H" and incorporated herein by reference.

54.     In her February 19, 2013 Letter, Ms. Kingston again notified BOA, together with BoA Merrill Lynch Asset Holdings, Inc., that the Loan was subject to "cram down" thereby reducing the principal balance, and also adjusting the interest rate and term.

55.     In her February 19, 2013 Letter, Ms. Kingston expressly requested, "If these loans are to be sold, the correct information should be given to the purchaser."

56.     Ms. Kingston further noted:

> Bank of America has misapplied payments within the 10 loans Mr. Kingston has, over a period of a year and a half: the loan balances, the interest rate, the payments made, principal, interest and escrow payments are not accurate. These are now, as stated in the court approval, 30 year loans at the interest rate agreed and approved by the court. This needs to be corrected before any one loan is sold to another agency.

57.     Notably, Ms. Kingston concluded her February 19, 2013 Letter with the assertion that "the next letter will be from Mr. Kingston's attorney" if the matter were not corrected.

58.     On February 21, 2013, counsel for Mr. Kingston contacted counsel of record for BOA via email seeking to correct the ongoing stay violations.

59.     In response, BOA's counsel requested a copy of the Confirmed Plan, the Confirmation Order and the Stipulation.  Copies of all three documents, together with the February 19, 2013 Letter and enclosures (which includes the Stipulation), were sent to BOA's counsel via email on February 22, 2013.  A true and correct copy of the February 21-22, 2013 Email Correspondence is attached hereto as Exhibit "I" and incorporated herein by reference.

60.     On February 26, 2013, the paralegal for BOA's counsel contacted Debtor's counsel requesting proof of Debtor's payments because "BOA claims that their system accurately reflects the new terms of the loan and found no discrepancies."

61.     On March 13, 2013, Debtor's counsel forwarded proof of payment, including 95 pages of cancelled checks, via reply email.  A true and correct copy of the February 26 and March 13, 2013 Emails, with attachments, are attached hereto as Exhibit "J" and incorporated herein by reference.

62.     On or about April 3, 2013, BOA responded:

> Per BOA, they will need to conduct a Master File Change to reflect the new terms of the loans. I
> have asked for BOA to let me know once changes are completed.

Attached hereto as Exhibit "K" is a true and correct copy of the April 3, 2013 Email, which is incorporated herein by reference.

63. On information and belief, BOA never accurately completed a Master File Change to reflect the new terms of the ten (10) loans, including the Loan.

64. Despite these communications, BOA continued its practice of sending payment demands and statements inconsistent with the Stipulation. Attached hereto as Exhibit "L", which is incorporated herein by reference is a copy of the BOA statement dated October 30, 2013, wherein BOA asserts a principal balance of $186,400.00 and a monthly payment of $1,009.67 as an interest only payment.

65. Further, on information and belief, BOA never advised subsequent note purchasers of the Confirmed Plan, Confirmation Order, Approval Order or Stipulation. This belief is based, in part, on a June 29, 2015 letter from Seterus, Inc. (the "June 29, 2015 Seterus Letter"), indicating that on April 1, 2015 BOA sold Seterus certain loans without providing any bankruptcy information, as follows:

> Our records indicate that the servicing of the loans transferred to Seterus from Bank of America on April 1, 2015.
> However, information regarding Mr. Kingston's Chapter 11 Bankruptcy was not provided to us at the time of the
> service transfer, and therefore our system was not updated to reflect the bankruptcy associated the loans until
> April 24, 2015. As a result, notices and other required documentation that indicated the contractual status of the
> loans were sent to Mr. Kingston. We apologize for any inconvenience or confusion this issue may have caused.

A true and correct copy of the June 29, 2015 Seterus Letter is attached hereto as Exhibit "M" and incorporated herein by reference.

66. On or about May 1, 2014, Debtor's personal assistant prepared a summary comparison on the ten (10) loans, showing the inaccurate balances, interest rates and monthly payments being demanded by BOA in comparison to the amounts required

under the Stipulation, Approval Order, Confirmed Plan and Confirmation Order. A true and correct copy of the Kingston - BOA Balance, Interest and Monthly Payment Comparison as of May 2014 is attached hereto as Exhibit "N" and incorporated herein by reference.

67.    On September 10, 2014, Debtor's counsel again sent BOA's counsel a letter detailing the history of the ongoing stay violations (the "September 10, 2014 Letter").  A true and correct copy of the September 10, 2014 Letter with enclosures is attached hereto as Exhibit "O" and incorporated herein by reference.

68.    A copy of Exhibit "N" was provided to BOA's counsel as a part of the September 20, 2014 Letter.  See Exhibit "O" at p. 221.

69.    As noted in the September 10, 2014 Letter, during all times relevant hereto, BOA and subsequent Defendants, were reporting these loans incorrectly to the credit reporting agencies, damaging Mr. Kingston's credit score.  Exhibit "O" at pp. 3 and 223-225.

70.    As noted in the credit reports enclosed in the September 10, 2014 Letter, each of the ten (10) loans were reported in a "Derogatory" condition, with pay status either "Unknown" or "Late 150 Days".  No reference is made to the Confirmed Plan or Stipulation, or payments under the same.  *Id.* at pp. 223-25.

71.    In response to the September 10, 2014 Letter, on October 7, 2014, BOA's counsel sent a letter providing inaccurate payment histories, and asserting that while the loans had been adjusted, three (3) of the ten (10) loans were "Current or "Current, paid ahead" while the remaining seven (7) loans were "Past due".  A true and correct copy of

the October 7, 2014 Letter with enclosures is attached hereto as Exhibit "P" and incorporated herein by reference.

72.    BOA's modified and revised loan history for Unit 1062 but fails to include all of Debtor's payments on the Loan.  It is unclear why the pagination for Unit 1062 begins on "Page 4" and fails to include "Pages 1-3".  A true and correct copy of the loan history for Unit 1062 is attached hereto as Exhibit "Q" and incorporated herein by reference.

73.    On January 13, 2015 BOA's counsel followed up its previous correspondence with a letter erroneously indicating that Debtor was in default on the Loan and had missed 8 months of payments on Unit 1062 from June 2014 through January 2015.  A true and correct copy of the January 13, 2015 letter is attached hereto as Exhibit "R" and incorporated herein by reference.

74.    In response to BOA's communications that Debtor was in default on multiple loans, Debtor's counsel sent a letter to BOA's counsel On March 31, 2015 once again stating that Debtor was not in default, that all payments had been made, attaching cancelled checks evidencing payments and requesting that BOA remove the Loan from default status.  A true and correct copy of the March 31, 2015 letter is attached hereto as Exhibit "S" and the attachments to the March 31, 2015 letter are attached hereto as Exhibit "T", both are incorporated herein by reference.

75.    Shortly thereafter, BOA transferred the servicing of the Loan to Seterus, Inc.  By a Transfer of Servicing Notice dated April 14, 2015, Seterus informed Debtor of the transfer which was effective thirteen (13) days prior on April 1, 2015.  A true and

correct copy of the April 14, 2015 Notice is attached hereto as Exhibit "U" and incorporated herein by reference.

76.    In its haste to get rid of servicing of the Loan, it appears that BOA did not provide Seterus with information regarding the Loan's status, the Stipulation or the Confirmed Plan.  Debtor received from Seterus a package of information dated April 16, 2015 which was aimed to help Debtor with his "default" and provide foreclosure prevention options, which included statements such as:

We want to help you minimize the negative impact of letting your loan continue in delinquency.

and;

Take action to avoid foreclosure and its severe consequences:
 ■ Call us immediately at **866.570.5277** to discuss options that may be available.
 ■ Review the enclosed Borrower Response Package for the documentation we need to evaluate you for available options.

and;

**Q. Why did I receive this package?**
You received this package because we have not received one or more of your mortgage payments and want to help you keep your home if at all possible. We are sending you this information now so that we can work with you to resolve any temporary or long-term financial challenges you face in making your late mortgage payments.

and;

# Q. Will the foreclosure process begin if I do not respond to this letter?

and;

**Q. Will my credit score be affected by my late payments or being in default?**
The delinquency status of your loan will be reported to credit reporting agencies as well as your entry into a repayment plan, forbearance plan, or trial period plan in accordance with the requirements of the Fair Credit Reporting Act and the Consumer Data Industry Association.

Attached hereto as Exhibit "V" is a true and correct copy of the April 16, 2015 assistance package, which is incorporated herein by reference.

77. The following day on April 17, 2015 Seterus mailed a letter to Debtor erroneously informing him that his loan was in default due to non-payment of $3,294.32. A true and correct copy of the April 17, 2015 default letter is attached hereto as Exhibit "W" and incorporated herein by reference. In addition to wrongly informing Debtor of a default, in contravention of the Stipulation and Confirmed Plan Seterus indicates penalties and fees will be assessed against Debtor as well as the possibility of "acceleration of the ENTIRE balance of the loan." Ex. W. at p. 1.

78. Continuing its barrage, Seterus sent a letter dated April 20, 2015 by which it returned Debtor's payment (uncashed check) stating that:

There is a foreclosure proceeding in progress. The funds are insufficient to bring the loan current, and the item must be certified.

A true and correct copy of the April 20, 2015 letter is attached hereto as Exhibit "X" and incorporated herein by reference.

79. On May 7, 2015, Debtor's personal assistant, Janae Kingston, sent Seterus a letter informing them that all payments have been timely made on the Loan, Debtor should not be charged fees for changing loan servicers and again referring them to the controlling bankruptcy Stipulation and Confirmed Plan. A true and correct copy of the May 7, 2015 letter is attached hereto as Exhibit "Y" and incorporated herein by reference.

80.    Additionally, Debtor's in-house counsel, Amy Kingston, sent a letter to Seterus again informing Seterus that the Loan is controlled by the Stipulation and that Debtor is current on all payments pursuant to the Stipulation.  In her letter, Ms. Kingston states, "[m]ultiple attempts to communicate with Bank of America to correct this issue were attempted prior to its transfer of note servicing to Seterus."  A true and correct copy of the May 19, 2015 Letter (without attachments) is attached hereto as Exhibit "Z" and incorporated herein by reference.

81.    On May 26, 2015, Debtor's personal assistant, Janae Kingston, again sent a letter to Seterus indicating all payments had been made, referred them to the bankruptcy rulings and included checks for April 2015 payment which Seterus had returned previously because the loan was in a foreclosure proceeding.  In her letter Ms. Kingston reiterated:

1.  All loans have been paid in a timely manner and sent 2 day air to ensure that there were no fees due or payable to Bank of America.
2.  There are no fees that are due to you for changing a servicer or for the new purchaser of the loan.

A true and correct copy of the May 26, 2015 letter is attached hereto as Exhibit "AA" and incorporated herein by reference.

82.    Seterus acknowledged Janae Kingston's May 7th inquiry by letter to Debtor's counsel on May 21, 2015.  Seterus' letter indicated that Federal National Mortgage Association (Fannie Mae) was the owner of the Loan.  On information and belief, no Transfer of Claim has been filed in relation to the claim associated with this Loan.  A true and correct copy of the May 21, 2015 Seterus Letter is attached hereto as Exhibit "BB" and incorporated herein by reference.

83.     Despite acknowledging that BOA failed to provide information regarding the Loan's bankruptcy treatment, Seterus incorrectly maintained that the original contractual terms of the Loan applied and that Unit 1062 was "contractually delinquent for the December 1, 2014 contractual installment." Exhibit M at p. 1.  Seterus then sought to educate Debtor's counsel regarding the interplay between a loan's contractual requirements and a confirmed bankruptcy payment plan:

> It is important to note that although all Bankruptcy payment plan payments may be received on time and the loan may be current according to the terms of the Bankruptcy payment plan, the funds received may not be sufficient to bring the loan to a contractually current status.  Therefore, the loans may be due for an earlier installment according to the contractual terms of the loans, and at the same time due for a later installment according to the terms of the Bankruptcy plan.

Id.

84.     On July 7, 2015 Debtor's counsel responded to Seterus' assertions regarding the "contractual status" of the loan, with a cease and desist letter indicating among other things that the Confirmed Plan controls the treatment of the Loan and that the notices regarding the contractual status of the loan are not just baseless but are actually violations of the Confirmed Plan.  A true and correct copy of the July 7, 2015 letter is attached hereto as Exhibit "CC" and incorporated herein by reference.

85.     In the fall of 2016 after largely ignoring the Confirmed Plan and Stipulation, Seterus referred to the bankruptcy as its reason for refusing to provide account statements pursuant to Janae Kingston's request.  Debtor's counsel replied on October 24, 2016 to Seterus correspondence with a request that Seterus apply this same reasoning when it came to future notices of default, demand or foreclosure and warned that failure to do so could lead to an action and request for damages.  A true and correct copy of the October 24, 2016 letter is attached hereto as Exhibit "DD" and incorporated herein by reference.

86.     On May 23, 1017 Debtor received a Notice of Sale of Ownership of
Mortgage Loan dated May 15, 2017 indicating that the Loan had been sold on April 25,
2017 to Bungalow Series F Trust.  The Notice does not identify a loan or account
number, nor a Unit number to which it refers.  Because Seterus is identified as the Loan
Servicer it is believed that the Notice may refer to Unit 1062.  On information and belief,
U.S. Bank, National Association through its subsidiary, U.S. Bank Trust National
Association, acts as trustee of the Bungalow Series F Trust.  A true and correct copy of
the May 15, 2017 notice is attached hereto as Exhibit "EE" and incorporated herein by
reference.

87.     Clearly frustrated from years of multiple letters, demands, default notices,
delinquency notices, foreclosure notices and lack of substantive responses to disputes and
correspondence from Debtor, Debtor's counsel, Debtor's in-house counsel and herself,
Janae Kingston sent a detailed letter dated June 1, 2017 to the servicers and owners of the
loans on the Rainbow Blvd. units including Seterus and BOA.  A true and correct copy of
the June 1, 2017 letter is attached hereto as Exhibit "FF" and incorporated herein by
reference.

88.     In her June 1, 2017 letter Ms. Kingston again sets out among other things
a) that the loans are subject to the terms of the Stipulation in the bankruptcy, b) sets forth
the payment terms, c) indicates that all payments have been made under the terms of the
Stipulation, and d) that the balances carried by the servicers and owners are incorrect and
should never been in default or foreclosure.  Exhibit FF at p. 1.

89.   Ms. Kingston's frustration boils over with the following paragraphs:

It is at this point, the continued sale, continued change of servicers is a terrible game that you inflict on your customers, it forces them to be late in your eyes, with no known loan number to be credited properly, send to the wrong servicer or the wrong addresses and then state this is NOT your problem. I believe when you are bound by a Federal court ruling, you in fact do have some responsibility to supply an invoice, a loan number in the notice of change of servicers. Imagine; you trying to figure out which loan when that servicer has multiple loans and they give no more information than their name, the client name and the new servicer.   In the last 3 months, five of the ten loans have changed servicers and/or owners. It seems that this is done on purpose to frustrate, give you an excuse to hold funds before crediting to his account. I have received these notices even after the check was sent with no indication it was going to be changed beforehand. I have the same vendor who has even changed their address after selling all the loans they had and bought another one. I have had some call and threaten Mr. Kingston to pay the entire overdue balance, which was incorrect; there is NO OVER DUE BALANCE< the loan was sold to them with improper information. I have never seen anything like this. I am experiencing it at my job, trying to be efficient for my boss, rebuild his credit and because of these actions by servicers, it is taking much more time than it should, making his credit worse because of improper reporting, and  therefore causing stress and inefficiency in my day to day work which I DO take seriously.

  I am sure most of you will ignore this letter, tell me that it has to go to your legal department, delay getting it there and charge more fees, hold the payment in suspense before you credit it so you can charge even more fees. All I can say is take some responsibility for your job, everyone is not a number. Some of us are trying to do the right thing and in that process are being mistreated. I have included in the documents a form that gives me permission to talk on any accounts, please file this in your records. I do plan on calling to get information and get this taken care of so that proper reporting is done. Please get this document to the proper person. I can be reached at 208-522-2365.

Id. at pp. 1-2.

90.   On information and belief, none of the loan servicers to whom the letter was sent – Seterus, Inc., Rushmore Loan Management, Fay Servicing, LLC, BOA, or BSI Financial – responded to Ms. Kingston's correspondence or made any substantive changes in their servicing of the loans.

91.   On June 19, 2017 Seterus sent a letter to Debtor's counsel incorrectly indicating that the loan was contractually delinquent.  Seterus' letter includes a Customer Account Activity Statement which purports to show how when payments were received and how they applied.  A true and correct copy of the June 19, 2017 letter is attached

hereto as Exhibit "GG" and incorporated herein by reference.    Seterus' Customer
Account Activity Statement is an incoherent jumble of numbers, payment explanations
and coding words.  Most months show approximately 4-6 entries including payments and
adjustments.  Incredibly, in May of 2016 there are thirty-two (32) entries, which Debtor
is somehow supposed to decipher.  See Ex. GG pp. 4-11.

92.    Seterus' June 19, 2017 letter also wrongly denies providing inaccurate
information to the major credit reporting agencies, and refuses to correct such inaccurate
reporting.  Id. at p. 3.

93.    In response to correspondence from Debtor requesting information that
was reported to the credit reporting agencies and requesting a statement, Seterus
responded to Debtor's counsel via a letter dated November 14, 2017.  A true and correct
copy of the November 14, 2017 letter is attached hereto as Exhibit "HH" and
incorporated herein by reference.

94.    In its November 14, 2017 letter Seterus refused to provide the requested
information because the signature on the request did not match the signature on the loan
documents.  See Ex. HH p. 2.  Despite having been notified multiple times that the Loan
was subject to the Stipulation and Confirmed Plan in Debtor's bankruptcy case, Seterus
enclosed a copy of the Note and Deed of Trust, indicating that such governed the Loan
and that Debtor was bound by the terms contained therein.  Id.

95.    In response to correspondence from Debtor's in-house counsel, Amy
Kingston, Seterus sent a letter dated November 21, 2017 to Debtor's counsel.  A true and
correct copy of the November 21, 2017 letter is attached hereto as Exhibit "II" and
incorporated herein by reference.

96.     In this letter, Seterus acknowledges the existence of the bankruptcy and the terms or repayment set out therein, however they still erroneously maintain that terms and provisions of the Note, which has been superseded by the Stipulation and Confirmed Plan, are applicable such as the right to charge property inspection fees, legal fees and initiation of foreclosure processes.  Ex. II at p. 3.

97.     By letter dated January 29, 2018 Debtor received a notice from Seterus advising him that Property Inspection Costs had been assessed against his Loan.  A true and correct copy of the January 29, 2018 letter is attached hereto as Exhibit "JJ" and incorporated herein by reference. The January 29, 2018 letter also includes an Itemization of Current Amount Owing that appears to be incorrect and includes charges not authorized in the Stipulation.

98.     On May 29, 2018 Debtor received a Periodic Account Notice dated May 21, 2018 from Seterus, which incorrectly showed a Total Amount Due of $5,466.04, Past Due Amount of $6,788.10, a Suspense credit of -$2,269.60 (an asterisk indicates that partial payments are held in a suspense account), a "Date of Default" of March 1, 2017, as well as a $15.00 charge for "Property Inspection Costs."  Debtor has made all payments fully and timely, thus there should be no partial payments in suspense accounts. Additionally, the Confirmed Plan and Confirmation Order do not allow for servicing fees, such as the Property Inspection Costs, to be charged to Debtor.  A true and correct copy of the May 21, 2018 Periodic Account Notice is attached hereto as Exhibit "KK" and incorporated herein by reference.

99.     On June 25, 2018, Debtor received another Periodic Account Notice from Seterus, dated June 18, 2018.  As with the previous month's Periodic Account Notice,

this notice showed an incorrect amount due, incorrect past due amounts and another charge for property inspection costs. A true and correct copy of the June 18, 2018 Periodic Account Notice is attached hereto as Exhibit "LL" and incorporated herein by reference.

100.    On July 9, 2018, counsel for Debtor received a letter from Seterus dated July 5, 2018. A true and correct copy of the July 5, 2018 letter is attached hereto as Exhibit "MM" and incorporated herein by reference.

101.    Contrary to the terms of the Confirmed Plan and Confirmation Order, Seterus' July 5, 2018 letter indicates that there are open fees of $510.00 on the Loan. Exhibit MM at p. 3. Additionally, Seterus acknowledges the existence of the bankruptcy plan while still stating that the terms of the loan's contract govern, and confusingly states:

**Enclosed for your reference are Customer Account Activity Statements for both loan, detailing the dates funds were received and how they were applied, based on the contractual status of the loan. Please be advised that, although all Bankruptcy Payment Plan payments may be received on time and the loan may be current according to the terms of the Bankruptcy Payment Plan, the funds received may not be sufficient to bring the loan to a contractually current status. Therefore, the account may be due for an earlier installment according to the contractual terms of the loan, and at the same time due for a later installment according to the terms of the Bankruptcy Plan.**
*Id*.

102.    Debtor continued to receive incorrect Periodic Account Notices from Seterus, with incorrect amount dues and unauthorized charges. Attached hereto as Exhibits "NN" and "OO" and incorporated herein by reference, are true and correct copies of the Periodic Account Notices for August and September 2018, respectively.

103.    Debtor has made every required monthly payment on the Loan from the Payment Commencement Date to the present. Attached hereto as Exhibit "PP" is a summary of all payments by the Debtor on the Loan ("Debtor's Payment Summary").

104.    Defendants have received all of Debtor's payments on the Loan from the Payment Commencement Date to the present.  Attached hereto as Exhibit "QQ" are all of the cancelled checks on the Loan.

105.    As a result of Defendants' failures to follow the Stipulation, Approval Order, Confirmed Plan and Confirmation Order, Debtor has been required to spending countless hours, including staff time, in responding to Defendants' baseless correspondence and violations, incurred attorneys' fees and expenses, delivery charges in responding to Defendants' violations, and such damages and fees continue to mount.

106.    Further, as a result of Defendants' inaccurate reporting to the various credit reporting agencies, Debtor's credit score has been damage.

107.    Attached hereto as Exhibit "RR" and Exhibit "SS" and incorporated herein by reference, are true and correct copies of the Debtor's Redacted Credit Reports as of September 24, 2015 and July 7, 2017, respectively, showing derogatory and inaccurate reporting, including assertions that some of the loans were in foreclosure, by Defendants to the three major credit-reporting agencies.

108.    Debtor has made multiple efforts to get Defendants to correct their credit reporting errors, but Defendants have refused or ignored Debtor's repeated requests.

109.    As a result of Defendants' actions and resulting damage to Debtor's credit score, Debtor and his business have been unable to obtain credit on reasonable terms, thereby negatively impacting Debtor's ability to perform the Confirmed Plan.  Attached hereto as Exhibit "TT" and incorporated herein by reference, is a true and correct copy of an October 11, 2018 email from Chase Bank to Debtor indicating denial of a mortgage request due to Debtor's credit score.

110.    As a direct result of Defendants' actions in repeating and continuously violating the Stipulation, Approval Order, Confirmed Plan and Confirmation Order, Debtor was required to reopen the bankruptcy case incurring additional filing fees and U.S. Trustee's quarterly fees that Defendants should be required to reimburse, in an amount according to proof.

111.    Defendants have engaged in a systematic scheme of sending multiple communications of default, missed payments, foreclosure notices, incorrect statements, fees, etc., which are intended to confuse, coerce, intimidate and wear down Debtor, in hopes of causing him to succumb to such erroneous demands.

112.    In some instances, Defendants have posted erroneous foreclosure notices on properties related to the ten (10) loans, and on information and belief on Unit 1062.

113.    Further, on information and belief, each Defendant has provided Debtor with annual Mortgage Interest Statements (Form 1098) that are inaccurate and that have impacted Debtor's tax obligations.

114.    The erroneous tax documents from Defendants have further damaged Debtor, requiring increase professional accounting assistance to correct and/or payment of additional taxes.

115.    Defendants' preferred responses to Debtor's repeated demands, as outlined above, have been to simply transfer the note rather than comply with the Stipulation, Approval Order, Confirmed Plan and Confirmation Order.

116.    Upon information and belief, the entities servicing the Loan have changed multiple times.   The loan servicers have similarly failed to follow the terms of the Stipulation, Approval Order, Confirmed Plan and Confirmation Order.

117.    Defendants' actions have resulted in extreme stress and frustration to Debtor, have negatively affected his business reputation and have adversely affected Debtor's credit worthiness, impairing the Debtor's ability to perform and complete the Confirmed Plan.

*COUNT ONE*
*(CONTEMPT – 11 U.S.C. § 362, 11 U.S.C. § 105)*

118.    Plaintiff realleges paragraphs 1 through 116, and makes the same a part of Count One as though fully set out herein.

119.    As set forth above, Defendants were on notice as to the terms of the Stipulation as well as the Confirmed Plan, the Approval Order and the Confirmation Order (see Doc. Nos. 160, 171 and 500) and that actions made in contravention of such constitute violations of the Confirmed Plan and applicable bankruptcy stay and injunction.

120.    11 U.S.C. § 362(a) bars any entity from taking:

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

121.    Defendants have violated the automatic stay with each and every communication to the Debtor indicating in any way that terms, other than those set forth in the Stipulation, govern and were applicable to the Loan.

122.    Defendants' multiple violations are willful, and with callous disregard of the Bankruptcy Code and this Court's orders, in particular 11 U.S.C. § 362(a), the Approval Order and the Confirmation Order.

123.    Defendants were, and are, aware of Debtor's bankruptcy petition and the Confirmed Plan, and were repeatedly notified of their continuing violations of the stay and Confirmed Plan.

124.    Under 11 U.S.C. § 362(k), 11 U.S.C. § 105 and this Court's inherent sanction power, Debtor "shall recover actual damages, including costs and attorney's fees." See 11 U.S.C. § 362(k).

125.    Pursuant to Nevada Revised Statutes § 18.010, Debtor is entitled to an award of attorney's fees and costs.

126.    Debtor is entitled to a judgment in his favor against these Defendants recovering all of his actual damages in an amount according to proof.

127.    Debtor is further entitled to his costs and attorney's fees in an amount according to proof, but not less than an additional $50,000.00.

128.    Further, given the ongoing, pervasive and persistent nature of Defendants' misconduct and willful disregard of this Court's Order and the Bankruptcy Code, Debtor is entitled to punitive damages in sufficient amount to get the attention of this institutional entities and ensure future compliance with the Stipulation, Approval Order, Confirmed Plan and Confirmation Order, as well as compliance with the Bankruptcy Code, as the Court determines under the facts of this case.

*COUNT TWO*
*(VIOLATION OF CONFIRMED PLAN AND COURT'S ORDER)*

129.    Plaintiff realleges paragraphs 1 through 127, and makes the same a part of Count Two as though fully set out herein.

130.    As set forth above, Defendants were on notice as to the terms of the Stipulation as well as the Confirmed Plan, and that actions made in contravention of such constitute violations of the Confirmed Plan and applicable bankruptcy stay and injunction.

131.    Paragraph 12.5 (Injunction) of the Confirmed Plan provides that:

**12.5 Injunction.**

Except as otherwise expressly provided in this Plan, all holders of claims against or Interests in Debtor are permanently enjoined, from and after the Effective Date, from (1) commencing or continuing in any manner any action or other proceeding of any kind on

any such claim against or Interest in Debtor or against the property dealt with by this Plan, or Debtor's estate; (2) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the property dealt with by this Plan or Debtor's estate; and (3) creating, perfecting or enforcing any encumbrance or any kind against the property or interests in property of the Debtor's estate, the Exempt Assets or property dealt with by this Plan. Further all creditors filing claims in this proceeding shall on the Effective Date of the Plan be required to dismiss Debtor from any action filed in any court.

Doc. 496-1, pp. 29-30.

132.        Paragraph 14.5 of the Confirmed Plan provides that:

**14.5 Term of Injunctions or Stays.**

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 cases under sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and in existence on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order), shall remain in full force and effect during the term of the Plan. All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

Doc. 496-1, p. 32.

133.    Defendants have violated the injunction and stay contained therein as well as the actual terms of the Confirmed Plan, the Court's Approval Order and Confirmation Order with every communication to Debtor indicating in any way that terms, other than those set forth in the Stipulation, govern and were applicable to the Loan.

134.    Defendants' multiple violations are willful, and with callous disregard of the Confirmed Plan and the Court's Approval Order and Confirmation Order, in that they were aware of Debtor's bankruptcy and repeatedly notified of their violations of the stay and Confirmed Plan.

135.    Under the Bankruptcy Code and the Court's inherent sanction power, Debtor is entitled to actual damages and costs.

136.    Pursuant to Nevada Revised Statutes § 18.010, Debtor is entitled to an award of attorney's fees and costs.

137.    Debtor is entitled to a judgment in his favor against these Defendants recovering all of his actual damages in an amount according to proof.

138.    Debtor is further entitled to his costs and attorney's fees in an amount according to proof, but not less than an additional $50,000.00.

139.    Further, given the ongoing, pervasive and persistent nature of Defendants' misconduct and willful disregard of this Court's Order and the Bankruptcy Code, Debtor is entitled to punitive damages in sufficient amount to get the attention of this institutional entities and ensure future compliance with the Stipulation, Approval Order, Confirmed Plan and Confirmation Order, as well as compliance with the Bankruptcy Code, as the Court determines under the facts of this case.

## COUNT THREE
### (BREACH OF CONTRACT)

140.    Plaintiff realleges paragraphs 1 through 138, and makes the same a part of Count Three as though fully set out herein.

141.    As set forth above, Defendants freely and voluntarily entered into the Stipulation with Debtor, which is attached hereto as Exhibit "A".

142.    Defendants, by their actions set forth above, have breached the terms of the Stipulation.

143.    Such breaches include, by way of illustration and not limitation, requiring additional payments not required under the Plan, requiring different payment amounts, misapplying payments, commencing or reporting foreclosure actions, etc.

144.    Defendants have acted in bad faith in performing their obligations under the Stipulation.

145.    As direct and proximate result of Defendants' actions, Debtor has sustained hundreds of thousands of dollars in damages, the exact amount to be determined at trial, but not less than $250,000.00.

146.    Further, pursuant to Nevada Revised Statutes § 18.010, Debtor is entitled to an award of attorney's fees and costs, in an amount according to proof, but not less than $50,000.00.

## COUNT FOUR
### (WILLFUL VIOLATION OF FAIR CREDIT REPORTING ACT – 15 U.S.C. § 1681)

147.    Plaintiff realleges paragraphs 1 through 145, and makes the same a part of Count Four as though fully set out herein.

148.   As set forth above, Defendants' have made, or caused to be made, inaccurate or false reports to the credit reporting agencies.

149.   Defendants are information furnisher(s) under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq*.

150.   Defendants are "furnishers" as that term is used in 15 U.S.C. § 1681s-2.

151.   Defendants did deliberately furnish inaccurate information regarding the Debtor and the Loan to credit reporting agencies with knowledge that such information was inconsistent with the Stipulation.

152.   15 U.S.C. 1681n imposes civil liability on any furnisher "who willfully fails to comply with any requirement" of the Fair Credit Reporting Act.

153.   Under § 1681n(a) of the Fair Credit Reporting Act, Debtor is entitled to actual damages, or statutory damages of not less than $100.00 and not more than $1,000.00 for each instance, whichever is greater.

154.   Further, Debtor is also entitled punitive damages and costs and attorney's fees as determined by the Court.

155.   Further, pursuant to Nevada Revised Statutes § 18.010, Debtor is entitled to an award of attorney's fees and costs, in an amount according to proof, but not less than $50,000.00.

*COUNT FIVE*
*(NEGLIGENT VIOLATION OF FAIR CREDIT REPORTING ACT – 15 U.S.C. § 1681)*

156.   Plaintiff realleges paragraphs 1 through 154, and makes the same a part of Count Four as though fully set out herein.

157.   As set forth above, Defendants have made, or caused to be made, negative reports to the credit reporting agencies.

158.    Defendants are information furnisher(s) under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq*.

159.    Defendants are "furnishers" as that term is used in 15 U.S.C. § 1681s-2.

160.    Defendants should have known that information reported concerning Debtor to credit reporting agencies was inconsistent with the Stipulation.

161.    15 U.S.C. 1681o imposes civil liability on any furnisher "who is negligent in failing to comply with any requirement" of the Fair Credit Reporting Act.

162.    Under § 1681o(a) of the Fair Credit Reporting Act, Debtor is entitled to actual damages, and costs and attorney's fees in an amount to be determined at trial, but not less than $50,000.00.

163.    Further, pursuant to Nevada Revised Statutes § 18.010, Debtor is entitled to an award of attorney's fees and costs, in an amount according to proof, but not less than $50,000.00.

*COUNT SIX*
*(BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)*

164.    Plaintiff realleges paragraphs 1 through 162, and makes the same a part of Count Six as though fully set out herein.

165.    As set forth above, Defendants entered into the Stipulation with Debtor.

166.    The purpose of the Stipulation was to fix Defendant's obligations under applicable bankruptcy law and to provide for Defendants treatment under the Confirmed Plan.

167.    Under Nevada law, Defendants had a duty to Plaintiff of acting in good faith and fair dealing with respect to the Stipulation.

168.   Defendants, by failing to follow their obligations under the Stipulation, were unfaithful to the purpose of the Stipulation.

169.   Defendants' actions in violation of the Stipulation denied the Plaintiff his justified expectations that his payments as made under the Stipulation would resolve all matters related to the loan at issue.

170.   Defendants held a special relationship with Plaintiff given their size and sophistication.

171.   Defendants acted with oppression, fraud and/or malice towards Plaintiff.

172.   As a direct and proximate result of Defendants' actions, Debtor has sustained hundreds of thousands of dollars in damages, the exact amount to be determined at trial.

173.   Plaintiff is entitled to contract damages as well as punitive damages against Defendants.

174.   Pursuant to Nevada Revised Statutes § 18.010, Debtor is entitled to an award of attorney's fees and costs.

*COUNT SEVEN*
*(DECLARATORY RELIEF)*

175.   Plaintiff realleges paragraphs 1 through 173, and makes the same a part of Count Seven as though fully set out herein.

176.   Defendants have acted outside of their authority and in breach of the Stipulation and Confirmed Plan, to which there is no adequate remedy at law.

177.   Accordingly, pursuant to the Stipulation and Confirmed Plan, Debtor seeks declarations from the Court as to:

a.   The amount(s) paid on the Loan by Debtor;

COMPLAINT – UNIT 1062                - 34 -

    b.   The monthly payment amount due by Debtor under the Stipulation going forward; and

    c.   The current, correct balance owing on the Loan under the Stipulation.

178.    Pursuant to Nevada Revised Statutes § 18.010, Debtor is entitled to an award of attorney's fees and costs.

*COUNT EIGHT*
*(INJUNCTIVE/MANDAMUS RELIEF)*

179.    Plaintiff realleges paragraphs 1 through 177, and makes the same a part of Count Eight as though fully set out herein.

180.    By making false, inaccurate and misleading reports to the credit reporting agencies, Defendants have damaged Debtor's business reputation, caused him undue personal stress and effected and/or prevented his ability to obtain financing.  For this there is no adequate remedy at law.

181.    Pursuant to 11 U.S.C. § 105, Debtor is entitled to an injunctive order, directing Defendants to make corrective reports to the credit reporting agencies indicating that their prior reports were false and inaccurate, and sanctioning Defendants in the amount of $1,000.00 per day per loan, including the Loan, until the Debtor's credit report is corrected.

182.    Pursuant to Nevada Revised Statutes § 18.010, Debtor is entitled to an award of attorney's fees and costs.

*COUNT NINE*
*(VIOLATION OF RESPA – 12 U.S.C. § 2601 et seq.)*

183.    Plaintiff realleges paragraphs 1 through 181, and makes the same a part of Count Nine as though fully set out herein.

184.    Debtor provided Defendants written communications that included the name of the account and borrower, stating the reasons that the account was in error and provided sufficient detail to Defendants for any information sought from them.

185.    Despite Debtor's qualified written request to them, Defendants failed to make corrections to the account and/or failed to respond to Debtor's request(s).

186.    Pursuant to 12 U.S.C. § 2605(f)(1) Debtor is entitled to actual damages as a result of Defendant's failure to comply with RESPA, and additional damages given Defendants' actions show a pattern of noncompliance.

187.    Debtor is entitled to recover costs and attorney's fees pursuant to 12 U.S.C. § 2605(f)(3).

## COUNT TEN
### (ATTORNEY'S FEES AND COSTS)

188.    Plaintiff realleges paragraphs 1 through 186, and makes the same a part of Count Nine as though fully set out herein.

189.    Debtor has been required to retain the services of Maynes Taggart, PLLC to prosecute this action and agreed to pay a reasonable attorney fee and costs incurred; that $50,000.00 is a reasonable attorney fee should the action result in a default judgment; should the action be contested, Debtor should be entitled to attorney fees and costs incurred; fees and costs should be awarded pursuant to  Nevada Revised Statutes § 18.010, 12 U.S.C. § 2605(f)(3), 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2), 11 U.S.C. § 362(k).

**WHEREFORE, Debtor prays for Judgment against Defendants as follows:**

1.      ON COUNT ONE:

      A.      For a Judgment against Defendants, joint and severally, in Debtor's favor in an amount according to proof;

      B.      That Debtor be awarded punitive damages in an amount sufficient to ensure future compliance with the bankruptcy process, Bankruptcy Code, and the orders of this Court, in an amount the Court deems appropriate;

      C.      That Debtor be awarded reasonable attorney's fees in the sum of $50,000.00 should the action result in a default judgment against Defendants; if the action is contested, Debtor should be entitled to the attorney's fees and costs incurred;

      D.      For such other and further relief as the Court may deem just.

2.      ON COUNT TWO:

      A.      For a Judgment against Defendants, joint and severally, in Debtor's favor in an amount according to proof;

      B.      That Debtor be awarded punitive damages in an amount sufficient to ensure future compliance with the bankruptcy process, Bankruptcy Code, and the orders of this Court, in an amount the Court deems appropriate;

      C.      That Debtor be awarded reasonable attorney's fees in the sum of $50,000.00 should the action result in a default judgment against Defendants; if the action is contested, Debtor should be entitled to the attorney's fees and costs incurred;

      D.      For such other and further relief as the Court may deem just.

3. ON COUNT THREE:

A. For a Judgment against Defendants, joint and severally, in Debtor's favor in an amount according to proof;

B. That Debtor be awarded reasonable attorney's fees in the sum of $50,000.00 should the action result in a default judgment against Defendants; if the action is contested, Debtor should be entitled to the attorney's fees and costs incurred;

C. For such other and further relief as the Court may deem just.

4. ON COUNT FOUR:

A. For a Judgment against Defendants, joint and severally, in Debtor's favor in an amount according to proof;

B. That Debtor be awarded punitive damages in an amount sufficient to ensure future compliance with the FCRA, in an amount the Court deems appropriate;

C. That Debtor be awarded reasonable attorney's fees in the sum of $50,000.00 should the action result in a default judgment against Defendants; if the action is contested, Debtor should be entitled to the attorney's fees and costs incurred;

D. For such other and further relief as the Court may deem just.

5. ON COUNT FIVE:

A. For a Judgment against Defendants, joint and severally, in Debtor's favor in an amount according to proof;

B. That Debtor be awarded punitive damages in an amount sufficient to ensure future compliance with the FCRA, in an amount the Court deems appropriate;

C.      That Debtor be awarded reasonable attorney's fees in the sum of $50,000.00 should the action result in a default judgment against Defendants; if the action is contested, Debtor should be entitled to the attorney's fees and costs incurred;

D.      For such other and further relief as the Court may deem just.

6.      ON COUNT SIX:

A.      For a Judgment against Defendants, joint and severally, in Debtor's favor in an amount according to proof;

B.      That Debtor be awarded punitive damages in an amount the Court deems appropriate;

C.      That Debtor be awarded reasonable attorney's fees in the sum of $50,000.00 should the action result in a default judgment against Defendants; if the action is contested, Debtor should be entitled to the attorney's fees and costs incurred;

D.      For such other and further relief as the Court may deem just.

7.      ON COUNT SEVEN:

A.      For a Judgment against Defendants, joint and severally, in Debtor's favor in an amount according to proof;

B.      An order of the Court declaring a) the amount(s) paid on Unit 1034 by Debtor; b) the monthly amounts due by Debtor; and c) the current, correct balance owing on the Loan under the Stipulation.

C.      That Debtor be awarded reasonable attorney's fees in the sum of $50,000.00 should the action result in a default judgment against Defendants; if the action is contested, Debtor should be entitled to the attorney's fees and costs incurred;

D.      For such other and further relief as the Court may deem just.

8.      ON COUNT EIGHT:

A.      For a Judgment against Defendants, joint and severally, in Debtor's favor in an amount according to proof;

B.      An order of the Court directing Defendants to make corrective reports to the credit reporting agencies indicating that their prior reports were false and inaccurate.

C.      That Debtor be awarded reasonable attorney's fees in the sum of $50,000.00 should the action result in a default judgment against Defendants; if the action is contested, Debtor should be entitled to the attorney's fees and costs incurred;

D.      For such other and further relief as the Court may deem just.

9.      ON COUNT NINE:

A.      For a Judgment against Defendants, joint and severally, in Debtor's favor in an amount according to proof;

B.      That Debtor be awarded actual damages and any additional damages for Defendants' noncompliance in an amount the Court deems appropriate, not to exceed $2,000.00;

C.      That Debtor be awarded reasonable attorney's fees in the sum of $50,000.00 should the action result in a default judgment against Defendants; if the action is contested, Debtor should be entitled to the attorney's fees and costs incurred;

D.      For such other and further relief as the Court may deem just.

DATED:      December 31, 2018

MAYNES TAGGART, PLLC

/s/ *Stephen K. Madsen*_____
STEPHEN K. MADSEN